UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-98

ELIZABETH THIES and GLORIA
THIES, CONSERVATOR FOR MT a minor                                PLAINTIFFS

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiffs' Motion to Dismiss Without Prejudice for Lack of Subject Matter Jurisdiction Under FRCP 41(a)(2) (Docket #30). Defendant has responded (Docket #38). Plaintiffs have replied (Docket #44). Plaintiffs also filed a Motion to Restyle Plaintiffs' Pending Motion (Docket #45). This matter is now ripe for adjudication. For the following reasons, Plaintiffs' motion to dismiss is DENIED.

## BACKGROUND

This action involves the denial of accidental death benefits under a group accident policy offered by Life Insurance Company of North America ("LINA"). Wade Thies was the insured under this policy, and an employee of Ingram Industries. Under the policy, if Mr. Thies were to die as the result of an accident, the insurance policy would provide benefits for Mr. Thies's beneficiaries. Mr. Thies died on May 29, 2006, in a jet ski accident in which he received blunt force injuries. The medical examiner found on July 6, 2006, that Mr. Thies's post-mortem blood alcohol level was 0.223 gm/100, and that acute alcohol intoxication, as a result of the blunt force injuries, was the cause of death.

Following Mr. Thies's death, his beneficiaries submitted a claim for benefits to LINA. On November 10, 2006, LINA denied this claim, finding that the basis for Mr. Thies's death was

not an accident. On January 5, 2007, Thies's estate appealed the denial of benefits. LINA denied the appeal on April 11, 2007. LINA explained that "all administrative levels of appeal have been exhausted and we cannot honor any further appeals on this claim." On May 11, 2007, the estate asked LINA to reconsider its decision. LINA replied on May 24, 2007, that no further appeals would be considered.

On May 12, 2009, Plaintiffs' current attorney submitted additional documentation to LINA. These documents included two expert forensic opinions and investigative report, which attempted to refute the medical examiner's findings. The reports state that Mr. Thies's blood alcohol level at the time of death may have been alcohol generated postmortem due to bacterial fermentation. On May 29, 2009, LINA informed Plaintiffs that no further appeals were available on the claim. Subsequently, Plaintiffs filed the present lawsuit.

The Court issued an Order on November 24, 2009, granting Plaintiffs until February 1, 2010, to conduct discovery as to whether the "safe harbor" provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") applies to this case. On April 1, 2010, the parties agreed to brief this matter by July 1, 2010. Instead, on May 7, 2010, Plaintiffs filed the present motion to dismiss. After several agreed orders extending deadlines, Defendant responded on June 28, 2010. Plaintiffs replied on August 20, 2010. The Court now considers Plaintiffs' motion.

## STANDARD

Initially, Plaintiffs moved for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2). That Rule provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless

the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2). Rule 41(a)(1) provides that a plaintiff may dismiss an action without a court order before the opposing party answers or files a motion for summary judgment, or if the parties stipulate to dismissal. Fed. R. Civ. P. 41(a)(1). "[T]he purpose of Rule 41(a)(2) is to protect the nonmovant . . . from unfair treatment." *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (citation omitted).

Plaintiffs' Motion to Restyle asks the Court to now consider its motion as a brief on subject matter jurisdiction instead of a motion to dismiss. Plaintiffs acknowledge that subject matter jurisdiction still exists under diversity jurisdiction. *See* 28 U.S.C. § 1332. Instead, Plaintiffs wish to file an amended complaint asserting state law, rather than ERISA, claims.

The Court acknowledges that the parties have fully briefed the issue of whether ERISA applies to this case. Therefore, the Court will consider this issue under the Rule 41(a)(2) standard. If the Court determines that ERISA does not apply, the Court will allow Plaintiffs to amend their complaint.

## DISCUSSION

Plaintiffs argue that Defendant has failed to demonstrate that ERISA is applicable to the insurance policy at issue. ERISA is a comprehensive statute enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). ERISA governs employer established or maintained "employee welfare benefit plans" that, among other things, provide benefits in the event of sickness, accident, disability, or death through the purchase of insurance. 29 U.S.C. § 1002(1).

"The existence of an ERISA plan is a question of fact, to be answered in light of all the

3

surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996). The Court follows a three-step factual inquiry:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. . . . Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." . . . Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Id.* at 434-35 (citations omitted). An insurance policy is excluded under the "safe harbor" provision if: "(1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered with payroll deduction." *Id.* at 435 (citing 29 C.F.R. § 2510.3-1(j)). All four requirements must be satisfied. *Id.* (citing *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir. 1992)).

**I.     Multiple Employer Welfare Arrangement**

Plaintiffs essentially argue that because the policy was issued to a multiple employer welfare arrangement ("MEWA"), which Plaintiffs allege is not an ERISA entity, the policy cannot be subject to ERISA. Under ERISA law, a MEWA is defined as follows:

> [A]n employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the

4

employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement which is established or maintained –

> (i) under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements,
>
> (ii) by a rural electric cooperative, or
>
> (iii) by a rural telephone cooperative association.

29 U.S.C. § 1002(40)(A). Paragraph (1) defines an employee welfare benefit plan as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). A MEWA must constitute an "employee welfare benefit plan" in order to be subject to ERISA. *See* U.S. DEP'T OF LABOR, MULTIPLE EMPLOYER WELFARE ARRANGEMENTS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA): A GUIDE TO FEDERAL AND STATE REGULATION 5 (2004). "[A] MEWA that is not an employee welfare benefit plan is governed by state law." *Eddy v. John Alden Life Ins. Co.*, No. 90 C 01736, 1991 WL 44289, at *4 (N.D. Ill. 1991).

According to the policy issued by Defendant, the policyholder is "Trustee of the Group Insurance Trust for Employers in the Wholesale Trade Industry." Ingram Industries, Inc. is the subscriber. A subscriber is defined by the policy as "[a]ny participating organization that subscribes to the trust to which this Policy is issued." LINA Policy, DN 1-2, p. 35. Defendant

5

acknowledges that the trust exists "solely for the purpose of allowing for the delivery of group policies insuring the employees of employer customers." Aff. of Michael James, DN 38-5, p. 3. Plaintiffs argue that the Trust is a MEWA and does not qualify as an employee welfare benefit plan because the Trust was not established or maintained by an employer.

The Court believes the Trust qualifies as a MEWA. The Trust is an arrangement established and maintained for the purpose of offering group accident insurance to employees of two or more employers. *See* 19 U.S.C. § 1002(40)(A). Clearly, the Trust does not fit one of the exceptions to the definition of an MEWA. *See* 19 U.S.C. § 1002(40)(A)(i)-(iii). Other than the title of the Trust, however, the Court knows very little about the Trust, such as who established it, who maintains it, how many employers are involved, who is the Trustee, and whether the Trust is self-insured. There is a very likely possibility that the Trust could be classified as a Multiple Employer Trust ("MET"), which is not considered an ERISA plan. *See* 1A COUCH ON INSURANCE § 7:21 (3d ed. 2010).

Accordingly, absent additional information, the Court cannot determine if the Trust constitutes an employee welfare benefit plan that should be governed by ERISA. In order to qualify as an employee welfare benefit plan, a MEWA must be "established or maintained by an employer or by an employee organization, or by both." 19 U.S.C. § 1002(1). There is insufficient information to reach a conclusion on this issue. But the Court need not determine whether the Trust was established or maintained by an employer.

The MEWA issue is not dispositive so long as Ingram Industries qualifies as an ERISA employer and established or maintained an employee welfare benefit plan. The group accident policy at issue was part of a larger "Ingram Employee Benefits Plan." The Ingram Employee

6

Benefits Plan ("the Plan") offers a variety of benefits to eligible employees, including medical, dental, vision, life, disability, and accidental death and dismemberment benefits. Defendant's group accident policy is included as one of these benefit plans. Therefore, the Court must determine if ERISA applies to the Ingram Industries Plan.

## II.     Safe Harbor Provision

In order to be exempt from ERISA, the Plan must satisfy all four of the "safe harbor" criteria. *See Thompson*, 95 F.3d at 435. First, the employer must not make any contribution to the policy. *Id.* In this case, Defendant argues that Mr. Thies did not pay the entire premium for coverage. However, Defendant has failed to present any evidence that Ingram Industries pays a portion of the premium for the group accident policy. Instead, there is evidence demonstrating that Mr. Thies chose his amount of coverage and paid the corresponding premium. Therefore, the first criterion is satisfied.

Employee participation in the policy must be voluntary. *Id.* There is no evidence that participation in the group accident insurance policy was mandatory. The Plan states that employees may elect coverage. Employees may also choose the amount of coverage. Therefore, this criterion is also satisfied.

The third criterion asks whether the employer endorses the policy. *See id.* The key to this determination is "employer neutrality." *Id.* at 436. The Sixth Circuit has held that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Id.* The amount of employer involvement should be considered from an employee's point of view. *Id.* at 437.

In *Thompson*, the Sixth Circuit adopted the First Circuit's reasoning in *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 (1st Cir. 1995). *Johnson* held:

> [A]s long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program . . . . It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture.

63 F.3d at 1134. Various courts have examined the factual scenarios that present issues of employer neutrality. For example, in *Thompson*, the Sixth Circuit found that employer determination of eligibility, negotiation of the terms of the policy, or naming the employer as plan administrator may be enough for a finding of endorsement. 95 F.3d at 436. In *Nicholas v. Standard Ins. Co.*, the Sixth Circuit ruled that "when an employer determines which employees will be eligible for coverage, negotiates the terms or benefits of the policy, is named as the plan administrator, and provides a summary plan description describing the plan as an ERISA plan, the plan is governed by ERISA." 48 Fed. App'x 557, 564 (6th Cir. 2002).

*Johnson* held that the trial court's finding of "no endorsement" was not clearly erroneous where the employer distributed booklets, recommended enrollment in a letter printed on company letterhead, and tracked employee eligibility. 63 F.3d at 1135-36 ("[The employer] had no hand in drafting the plan, working out its structural components, determining eligibility for coverage, interpreting policy language, investigating, allowing and disallowing claims, handling litigation, or negotiating settlements."). The First Circuit distinguished *Johnson* from a similar case in which the Fifth Circuit ruled that the employer had endorsed the insurance plan at issue by embossing the program booklet with the corporation's logo, and describing the policy in the booklet as "our plan." *Id.* at 1137 (citing *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 973-74 (5th

8

Cir. 1995)). The First Circuit found that "[i]n the difference between 'our plan' and 'a plan' lies the quintessential meaning of endorsement." *Id.*

"The question of endorsement *vel nom* is a mixed question of fact and law. In some cases, the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion." *Thompson*, 95 F.3d at 437 (quoting *Johnson*, 63 F.3d at 1135 n. 3).

In this case, the Plan's purpose is to "provide eligible individuals and their eligible dependents with medical and other welfare benefits sponsored by the Company." Ingram Plan, DN 38-2, p. 6. The Plan's introduction also states that it is intended to qualify as an employee welfare benefit plan under ERISA. *Id.* Ingram refers to itself as the "Plan Sponsor." *Id.* at 10. The Plan Administrator is "the Executive Vice President, Human Resources and Administration of Ingram Industries Inc., or such other title performing the same function from time to time." *Id.* The Plan Administrator handles all employee benefit elections and may request additional information or reject enrollment applications. *Id.* at 11. In addition, the Plan Administrator "shall administer and interpret the Plan and shall have the sole and absolute discretionary power to take all action and to make all decisions necessary or proper to carry out the terms of the Plan." *Id.* at 33. The Plan Administrator also has the power to make rules and regulations, interpret the Plan, decide all questions and eligibility, and to maintain accounts regarding the fiscal transactions of the Plan. *Id.*

Michael James, Operations Representative for Defendant, testified that Ingram Industries negotiated the terms of the Policy, which was issued in conjunction with the Plan. Aff. of Michael James, DN 38-5, p. 3. Ingram Industries also "files a Form 5500 under ERISA with respect to the Policy." *Id.* at 2. Based on the relevant case law, the Court finds that the evidence

9

points towards one conclusion on the issue of employer endorsement. Therefore, this is a question of law for the Court to decide. *See Thompson*, 95 F.3d at 437 (quoting *Johnson*, 63 F.3d at 1135 n. 3). Ingram Industries determines eligibility, negotiates the terms of the policy, references ERISA in the Plan and files a Form 5500, and is named as the plan administrator. Under the current case law, this is enough to demonstrate endorsement on the part of Ingram Industries. Accordingly, the third criterion is not satisfied, and the safe harbor provision does not apply.

### III.     Existence of a "Plan"

Once the Court determines that the safe harbor provision does not apply, it must decide if a "plan" existed. A reasonable person must be able to "'ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Thompson*, 95 F.3d at 435 (quoting *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991)). In this case, the Plan provides a variety of benefits, including the group accident insurance policy. The class of beneficiaries are those employees deemed eligible, as defined by the Plan. Under the Plan, Ingram Industries pays for some benefits, while employees must contribute if they desire certain other benefits. Finally, employees are directed to submit claims to the claims administrator in order to receive benefits. The Court believes a reasonable person would be aware of these conditions, and therefore finds that a plan exists.

### IV.     Whether Employer "Established or Maintained" the Plan

Finally, to determine if ERISA applies, the Court must find that the employer intended to establish or maintain a plan "with the intent of providing benefits to its employees." *Thompson*, 95 F.3d at 435 (citing *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir.

10

1995); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991)). "In addition to some meaningful degree of participation by the employer in the creation or administration of the plan, the statute requires that the employer have had a purpose to provide . . . benefits to its employees. . . . [T]he evidence must show that the employer had an intent to provide its employees with a welfare benefit program through the purchase and maintenance of [the] group insurance policy." *Hansen*, 940 F.2d at 977.

By including the group accident insurance policy as part of the Ingram Employee Benefits Plan, Ingram Industries clearly indicated an intent to provide this coverage as part of its welfare benefit program. The Plan states that its very purpose is to "provide eligible individuals and their eligible dependents with medical and other welfare benefits sponsored by the Company." Ingram Plan, DN 38-2, p. 6. In addition, the Plan specifically mentions ERISA, which is further evidence that Ingram Industries intended the policy to be part of a welfare benefit program. Accordingly, the Court finds that this factor is satisfied.

Finding that the safe harbor provision does not apply, a plan exists, and Ingram Industries intended to provide a welfare benefit program, the group accident insurance policy is governed by ERISA. Accordingly, Plaintiffs' motion to dismiss must be denied, and Plaintiffs will not be allowed to amend their Complaint to include state law claims.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion to Dismiss Without Prejudice for Lack of Subject Matter Jurisdiction Under FRCP 41(a)(2) is DENIED, and Plaintiffs' Motion to Restyle Plaintiffs' Pending Motion is DENIED as moot.

This matter is set for a telephonic conference on **September 22, 2010** at **8:30 am CST** to

establish a briefing schedule. The Court will place the call to counsel. The parties are directed to confer prior to the telephone conference.