UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-98

ELIZABETH THIES and GLORIA
THIES, CONSERVATOR FOR MT a minor                      PLAINTIFFS

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiffs' Motion to Require Defendant's Production of Materials Removed and/or Omitted from the Administrative Record (Docket #54). Defendant has responded (Docket #55). Plaintiffs have replied (Docket #56). This matter is now ripe for adjudication. For the following reasons, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This action involves the denial of accidental death benefits under a group accident policy offered by Life Insurance Company of North America ("LINA"). Wade Thies was the insured under this policy, and an employee of Ingram Industries. Under the policy, if Mr. Thies were to die as the result of an accident, the insurance policy would provide benefits for Mr. Thies's beneficiaries. Mr. Thies died on May 29, 2006, in a jet ski accident in which he received blunt force injuries. The medical examiner found on July 6, 2006, that Mr. Thies's post-mortem blood alcohol level was 0.223 gm/100, and that acute alcohol intoxication, as a result of the blunt force injuries, was the cause of death.

Following Mr. Thies's death, his beneficiaries submitted a claim for benefits to LINA. On November 10, 2006, LINA denied this claim, finding that the basis for Mr. Thies's death was

not an accident.  On January 5, 2007, Thies's estate appealed the denial of benefits.  LINA denied the appeal on April 11, 2007.  LINA explained that "all administrative levels of appeal have been exhausted and we cannot honor any further appeals on this claim."  On May 11, 2007, the estate asked LINA to reconsider its decision.  LINA replied on May 24, 2007, that no further appeals would be considered.

On May 12, 2009, Plaintiffs' current attorney submitted additional documentation to LINA.  These documents included two expert forensic opinions and investigative report, which attempted to refute the medical examiner's findings.  The reports state that Mr. Thies's blood alcohol level at the time of death may have been alcohol generated postmortem due to bacterial fermentation.  On May 29, 2009, LINA informed Plaintiffs that no further appeals were available on the claim.  Subsequently, Plaintiffs filed the present lawsuit on June 3, 2009.

The Court issued an Order on November 24, 2009, granting Plaintiffs until February 1, 2010, to conduct discovery as to whether the "safe harbor" provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") applies to this case. On April 1, 2010, the parties agreed to brief this matter by July 1, 2010.  Instead, on May 7, 2010, Plaintiffs filed a motion to dismiss arguing that ERISA is inapplicable to this case.  The Court denied this motion on September 14, 2010.  The parties entered an agreed scheduling order on September 24, 2010.  The administrative claim file was filed with the Court on October 21, 2010.  Defendant withheld the administrative manual and two documents Defendant believes are privileged.  Plaintiff filed this motion to compel on December 17, 2010.

## DISCUSSION

Plaintiffs challenge the exclusion of two documents withheld as privileged and

2

Defendant's failure to include the administrative claim manual in the administrative claim file. The Court addresses these two issues separately.

**I.      Attorney-Client Privilege**

Two email documents dated March 26, 2007, and May 24, 2007, were withheld from the administrative claim file on the basis that these documents are subject to the attorney-client privilege and work product doctrine. Plaintiffs argue that these two documents must be disclosed because the fiduciary exception to the attorney-client privilege applies. In contrast, Defendant believes these two documents are not subject to the fiduciary exception because they were prepared in anticipation of litigation and unrelated to plan administration.

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege is not "'ironclad,'" however, and is subject to exceptions. *In re United States*, 590 F.3d 1305, 1310 (Fed. Cir. 2009) (quoting *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir. 1970)). One such exception is the fiduciary exception, which requires that "when an attorney gives advice to a client who is acting as a fiduciary for third-party beneficiaries, that attorney owes the beneficiaries a duty of full disclosure." *Parker v. Stone*, No. 3:07-cv-00271 (VLB), 2009 WL 1097914, at *2 (D. Conn. Apr. 21, 2009) (citing *In re Long Island Lighting Co.*, 129 F.3d 268 (2d Cir. 1997)).

Under the fiduciary exception in the context of ERISA, "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" *Bland v. Fiatallis North America, Inc.*,

401 F.3d 779, 787 (7th Cir. 2005) (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272).

This is because "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Widbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) (citing *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982)).

The fiduciary exception generally applies only to communications related to plan administration and not to communications after a final decision or "addressing a challenge to the plan administrator in his or her personal capacity . . . ." *Redd v. Brotherhood of Maintenance of Way Employees Div. of the Int'l Brotherhood of Teamsters*, No. 08-11457, 2009 WL 1543325, at *1 (E.D. Mich. June 2, 2009). As the Ninth Circuit explains:

> Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries . . . , the attorney-client privilege remains intact.

*United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999). "[H]ard cases should be resolved in favor of the privilege, not in favor of disclosure." *Id.* at 1065.

Although the Sixth Circuit has not addressed the fiduciary exception in regards to an ERISA case, it has recognized the exception in a different context. *See Fausek v. White*, 965 F.2d 126, 133 (6th Cir. 1992) (applying the exception to a dispute between a corporation and its minority shareholders). Several district courts in the Sixth Circuit have applied or discussed the fiduciary exception in ERISA cases. *See, e.g.*, *In re Trans-Industries, Inc.*, No. 1:10 MC 34,

4

2010 WL 5116906 (N.D. Ohio Dec. 9, 2010); *Redd*, 2009 WL 1543325 at *1; *Shields v. Unum Provident Corp.*, No. 2:05-CV-744, 2007 WL 764298 (S.D. Ohio Mar. 9, 2007). Accordingly, the Court finds that it is appropriate to consider whether the fiduciary exception to the attorney-client privilege applies in this case.

The Court ordered LINA to produce the two privileged email documents for the Court's *in camera* review. The Court has now reviewed these two documents (CIGNA-THIES 0004-0007 and CIGNA-THIES 0010-0011) and finds that both are privileged. Therefore, the Court must determine whether the fiduciary exception applies to these two email documents.

The first email was sent on March 26, 2007. This document was generated following the first denial of Plaintiffs' benefits claim and after Plaintiffs indicated they wished to appeal the decision on January 5, 2007. Defendant's policy allows claimants to submit an appeal within sixty days of receipt of a denial letter. The appeal was denied on April 11, 2007.

Defendant contends that the fiduciary exception does not apply to this email because it was generated in anticipation of litigation after receipt of the appeal letter sent by Plaintiffs' retained counsel. In support of this argument, Defendant cites to *Buzzanga v. Life Insurance Co. of North America*, No. 4:09-CV-1353 (CEJ), 2010 WL 1292162 (E.D. Mo. Apr. 5, 2010). In *Buzzanga*, the plaintiff submitted a claim on January 18, 2008, which was denied on June 30, 2008. *Id.* at *1. Plaintiff filed an appeal nearly a year later on June 5, 2009; the denial was affirmed on August 19, 2009. *Id.* Four documents were withheld from the claims file, which Plaintiff sought production of pursuant to the fiduciary exception. *Id.* Three of these documents were written before June 30, 2008 while the fourth was written on August 13, 2009. *Id.*

Noting that application of the fiduciary exception often focuses on whether the

communication was made before or after a decision to deny benefits, the district court held that the three documents dated before the initial determination were subject to the fiduciary exception. *Id.* at *3 (citing *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 48 (D. Mass. 2007)). In contrast, the district court held that the fourth document was not subject to the fiduciary exception as it was "generated on August 13, 2009, in response to an appeal filed by plaintiff's counsel." *Id.* at *4. The Court noted: "By that time, 'the prospect of litigation was sufficient to erect the attorney work product doctrine as a bar to the subject information.'" *Id.* (quoting *Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 626 (E.D. Mo. 2000)).

This case is distinguishable from *Buzzanga*. In that case, the plaintiff did not appeal the denial of her claim until nearly a year after the initial decision. In contrast, Plaintiff timely appealed here within the sixty day period permitted by Defendant. The benefits decision was not final at that time. In addition, there is no evidence in this case that Plaintiffs' claim was treated as anything other than an appeal between January 5, 2007, and April 11, 2007. Plaintiffs' attorney at the time, Kevin Shannon, noted in his letter to Defendant that the letter served as an appeal or request for a review of the denial of the claim. This letter does not reference ERISA or the possibility of litigation.[1] Defendant responded to this letter on January 17, 2007, indicating that it had received Plaintiffs' request for an appeal. That letter also explained the appeal review process in more detail. Defendant also sent several letters to Mr. Shannon to update Plaintiffs on

---

[1]This is further highlighted by the fact that litigation was not commenced until June 3, 2007, more than two years after the March 26th email was composed. *Accord Shields v. Unum Provident Corp.*, No. 2:05-CV-744, 2007 WL 764298, at *8 (S.D. Ohio Mar. 9, 2007) (finding that the work product doctrine did not apply to documents prepared over a year before litigation commenced because the doctrine's protection is limited to the time period when a "'real and substantial possibility of litigation exists'" (citations omitted)).

the status of their appeal before ultimately affirming its original determination.

The *only* fact which possibly indicates future litigation is that Plaintiffs retained counsel during the appeals process. The Court believes this fact on its own, however, is insufficient to prevent application of the fiduciary exception.[2] Were this the rule, plaintiffs who seek advice from counsel in regards to benefit decisions would be at an unfair disadvantage insofar as the application of the fiduciary exception. Accordingly, the Court finds that the fiduciary exception applies to the March 26, 2007, email and this document must be produced to Plaintiff.

The second document withheld from the administrative record is an email string dated May 24, 2007. On May 11, 2007, Plaintiffs' attorney at the time sent a letter to Defendant requesting a reconsideration following the denial of Plaintiffs' benefits on appeal. This letter identified itself as a "final demand for payment of the claim in question." The letter is argumentative and specifically states "Mr. Thies' beneficiaries intend to pursue their claims in court . . . ." Thus, there is no question that there was a real and substantial possibility of litigation at the time this letter was written. Defendant responded to this letter on May 24, 2007, noting that Plaintiffs had exhausted their administrative remedies and no further appeals would be considered. Upon an *in camera* review of the May 24, 2007, email document, the Court finds that this document is privileged and the fiduciary exception does not apply. Accordingly, this document was properly withheld.

## II. Administrative Manual

---

[2]Nor does the work product doctrine prevent disclosure. For this doctrine to apply, the party seeking to withhold documents must establish that the documents "were prepared by counsel in anticipation of litigation." *Shields*, 2007 WL 764298 at *7. As noted by the Court, nothing indicates that, at the time the email was created, there was a "'real and substantial possibility of litigation . . . .'" *Id.* at *8 (citations omitted).

Next, Plaintiffs argue that Defendant is required to disclose the "Accidental Death and Disability Resource" and "AD&D Instructor's Guide." Defendant notes that because these manuals were not used or relied upon in making its determination, it would be improper to include these documents within the administrative claim file. In response, Plaintiffs state that such documents may still be considered by the Court even if they are not part of the administrative record.

Plaintiffs cite to two Sixth Circuit opinions in support of their argument that the Court may consider plan documents outside of the administrative record. *See Brooking v. Hartford Life and Accident Ins. Co.*, 167 F. App'x 544, 547 n. 4 (6th Cir. 2006); *Bass v. TRW Emp. Welfare Benefits Trust*, 86 F. App'x 848, 851 (6th Cir. 2004). In *Bass*, the Sixth Circuit noted:

> Bass is unquestioningly correct in his assertion that a district court when reviewing a plan administrator's denial of benefits cannot look past the administrative record. *See Perry v. Simplicity Eng'g, Inc.*, 900 F.2d 963, 967 (6th Cir. 1990) (stating that both de novo and "arbitrary and capricious" review "do[ ] not mandate or permit the consideration of evidence not presented to the administrator"). The case law makes clear, however, that the rule was intended to prevent the courts from looking past the *evidence of disability* - medical reports, correspondence, test results, and the like - considered by the plan administrator; it does not suggest that the rule covers the benefits plan itself, which is in the nature of a contract. *See Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002).

86 F. App'x at 851 (emphasis in original). Thus, the district court properly considered the "Employee Benefits Book" despite its exclusion from the administrative record. *Id.* at 851-52. Likewise, in *Brooking*, the Sixth Circuit, citing *Bass* with approval, held that it was appropriate to consider the Summary Plan Description contained in the Employee Benefits Handbook. 167 F. App'x at 547 n. 4.

In contrast, Defendant argues that because the guidelines sought by Plaintiffs were not

relied upon, submitted, considered or generated in reviewing their claim, production is not required. While the administrative record may certainly include "any internal policy guidelines, communications, manuals, or billing agreements with third parties," only those that were relied upon to decide Plaintiff's claim should be included in the record. *Shultz v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 09-1220-WEB, 2010 WL 5067629, at *2 (D. Kan. Dec. 7, 2010). Thus, where a beneficiary could not establish that an insurer's internal "Claims Management Guidelines" was relied upon in making a benefits determination, the Guidelines were properly excluded from the administrative claim file. *Brooks v. Metropolitan Life Ins. Co.*, 526 F. Supp. 2d 534, 536-37 (D. Md. 2007); *see also Byrd v. Metropolitan Life Ins. Co.*, No. 3:07-CV-206, 2008 WL 974787, at *2 (E.D. Tenn. Apr. 9, 2008).

The Court finds that disclosure of the "Accidental Death and Disability Resource" and "AD&D Instructor's Guide" is not required at this time. Defendant has submitted a sworn affidavit indicating under penalty of perjury that these items were not used or considered in the review of Plaintiffs' claim. Therefore, inclusion of these items in the administrative record would be improper. In addition, although Sixth Circuit precedent permits the Court to examine Plan documents outside of the administrative record, the Court finds that these documents are irrelevant to the Court's review of Plaintiffs' wrongful denial of benefits claim. Accordingly, Plaintiffs' motion to compel as to the administrative manual is DENIED.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion to Require Defendant's Production of Materials Removed and/or Omitted from the Administrative Record (Docket #54) is GRANTED IN PART and DENIED IN PART.