# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION
## CASE NO. 5:09-CV-98

**ELIZABETH THIES and**
**MATTHEW THIES**                                                    **PLAINTIFFS**

**v.**

**LIFE INSURANCE COMPANY OF**
**NORTH AMERICA**                                                    **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiffs' Motion for Judgment on Counts I & II (Docket #67).  Defendant has responded (Docket #77).  Plaintiff has replied (Docket #79).  The Court has reviewed the administrative claim file (Docket #51).  This matter is now ripe for adjudication.

## BACKGROUND

On May 28, 2006, Wade Thies was killed while operating a jet ski on Kentucky Lake.  Administrative Record at 198-99 [hereinafter "A.R. at __"].  According to the Kentucky Boating Accident Report, Mr. Thies's vessel "ramped off an under water rock and struck an above water rock causing Mr. Thies to strike the above water rock."  A.R. at 199.  "After Mr. Thies struck the above water rock he fell into of [sic] water and drowned."  *Id.*

At the time of his death, Mr. Thies was employed as a riverboat captain by Ingram Industries, Inc. ("Ingram"), a corporation that subscribed to Life Insurance Company of North America's ("LINA") Group Policy No. COA 002533 (the "Policy").  A.R. at 323.  The Policy provided accidental death and dismemberment benefits.  A.R. at 327.  Ingram paid for the basic employee benefit, which amounted to two times the employee's salary.  A.R. at 295.  Mr. Thies opted to increase this coverage in the amount of ten times his salary, providing a total benefit of

$768,000.00 and burial benefits in the amount of $5,000. *Id.*

Following Mr. Thies's death, Plaintiffs filed a claim for benefits on October 5, 2006, which was received by LINA on October 18, 2006. A.R. 295-97. The claims examiner, James Macom, reviewed the Proof of Loss form, Mr. Thies's death certificate, the coroner's report, and the Kentucky Boating Accident Report. A.R. at 273. Mr. Thies's death certificate indicates that Mr. Thies died from drowning as a result of injuries caused by a jet ski accident. A.R. at 320. The death certificate also lists blunt force injuries from a jet ski accident and acute alcohol intoxication as other significant conditions contributing to his death. *Id.* The coroner's report lists the cause of death as drowning caused by a jet ski accident and lists acute alcohol intoxication as a contributing factor. A.R. at 212. Both documents classify the manner of death as an "accident." A.R. at 212, 320.

The Kentucky Boating Accident Report, submitted on June 9, 2006, indicates that the boating accident involved "Collision with Fixed Object" and "Falls Overboard." A.R. at 198-99. It also lists excessive speed, alcohol use, and operator inattention as other contributing factors. A.R. at 198. The report notes that Mr. Thies did not use a personal flotation device and drowned. A.R. at 199. At the bottom of the report, alcohol use is listed as the primary cause of the accident and operator inattention is listed as the secondary cause. *Id.* A Toxicology Report dated June 2, 2006, and attached to the boating report found a BAC of 0.223. A.R. at 202.

On November 10, 2006, Mr. Macom denied Plaintiffs' claim, finding Mr. Thies's death was not a "Covered Accident" and the exclusion for intentionally self-inflicted injuries applied:

> Evidence obtained in the claim file supports that Mr. Thies died of drowning, as a consequence of injuries sustained in a jet ski crash. The crash occurred on 05/28/2006 at 7:00 PM. According to the Kentucky Boating Accident Report, there was no evidence of inclement weather or poor visibility. The report

indicated that Mr. Thies was operating his jet ski close to shore, and that he struck an underwater rock, causing him to strike another rock, causing injuries that contributed to his drowning. The report concluded that excessive speed, operator inattention, and alcohol use contributed to the accident. The Toxicology report confirms that Mr. Thies' blood alcohol concentration was .223%.

In Kentucky, it is illegal to boat while intoxicated. A person is considered to be intoxicated with a blood alcohol level of 0.08% or higher. Toxicology testing reveals that Mr. Thies had a blood alcohol concentration of 0.223%. This is over 2.5 times the legal limit.

The hazards of boating, or operating any motorized vehicle, while intoxicated are widely known an [sic] publicized. It is well known that doing so could result in bodily harm or death. The evidence on file supports that Wade Thies made a conscious decision to consume alcohol to a level that exceeded the legal limit in the State of Kentucky (0.08%). This was an intentional act. The evidence supports that this level of intoxication contributed to the jet ski crash that eventually led to his death.

**The policy specifically excludes the payment of benefits in cases involving intentionally self-inflicted injuries.** Having reviewed the available information, there is evidence to support that Mr. Thies' death was contributed to by his voluntary ingestion of alcohol. This was an intentional act, and that act contributed to his jet ski crash, that lead to the drowning that caused his death.

**In addition, we have determined that the crash does not meet the definition of Covered Accident.** As stated above, a Covered Accident must be an unforeseen event. The hazards of boating or operating a motorized vehicle while intoxicated are widely known and publicized. Because of this, the jet ski crash that led to Mr. Thies' death was not unforeseeable, and therefore does not qualify as a Covered Accident as defined by the policy.

A.R. at 273-74 (emphasis added). Plaintiffs were provided a copy of the Policy provisions and informed of their right to appeal the decision. A.R. at 272, 274-75.

Plaintiffs filed their appeal on January 5, 2007. A.R. at 191. Plaintiffs' attorney submitted the Kentucky Boating Accident Report, the coroner's report, the Western Kentucky Regional Medical Examiner's Office Final Diagnosis, and supporting caselaw. A.R. at 191-230. Renee Worst, Technical Specialist for LINA, responded on January 17, 2007, advising Plaintiffs

that their appeal was received.  A.R. at 189.  Worst requested any additional information be submitted by February 2, 2007.  *Id.*

Plaintiffs' claim was sent to Michael Grimes for legal review on March 26, 2007.  A.R. at 10-11.  On April 11, 2007, Ms. Worst wrote to Plaintiffs informing them that their claim had been denied on appeal.  A.R. at 183.  Ms. Worst wrote:

> The information in our file indicates that Wade Thies died May 29, 2006 when he was involved in a jet ski crash in which the jet ski he was operating struck an underwater rock, causing him to strike another rock, causing injuries that contributed to his death.  The death certificate states that Mr. Thies' cause of death was drowning.  Other significant conditions which contributed to death but not resulting in the underlying cause of death were blunt force injuries from jet ski accident, acute alcohol intoxication.

> According to the Kentucky Boating Accident Report, the primary cause of the accident was alcohol use.  The secondary cause of the accident was operator inattention.  No jet ski or environmental factors were noted to contribute to the collision.

> We reviewed the autopsy report form [sic] the Medical Examiner's Office.  There was no evidence of any medical condition that would have contributed to the crash.  The toxicology report shows that Mr. Theis' [sic] blood screen produced a blood alcohol level of .223%.  In the State of Kentucky, it is illegal to operate any vessel, water skis, surfboard or similar devices while under the influence and on the waterways of Kentucky.

> According to the information on file, Wade Thies was involved in a single vessel crash on May 28, 2006.  According to the Kentucky Boating Accident Report there were no adverse weather conditions or vehicle mechanical malfunctions that would have contributed to the crash.

> We have confirmed that Mr. Theis' [sic] blood alcohol level was 0.223%, which is over twice the legal limit for the State of Kentucky (0.08%).

> A review of the file indicates that Mr. Thies worked as a River Boat Captain.  There is no information to support the fact that Mr. Thies would have been unable to understand the risks involved in drinking and operating a jet ski.

> Any reasonable person could have foreseen that Mr. Thies' drinking and operating a jet ski might cause injury or death.  Mr. Thies' voluntary actions

4

placed him in a position where he would be at risk to personal injury or death. Since Mr. Thies' death was the foreseeable result of his own voluntary actions, we have concluded that his death was not accidental. This policy, as quoted previously, pays a benefit if the insured dies as a result of an accident. Rather, we have determined that Mr. Thies' death was the result of his own self inflicted injuries, which is specifically excluded from this policy. Since we have concluded that Mr. Thies' death was not an accident, we have determined that no Accidental Death benefits are payable under the terms of policy COA 2533.

A.R. at 184-85. Ms. Worst advised Plaintiffs that they had exhausted their administrative levels of appeal and no further appeals would be honored. A.R. at 185.

Plaintiffs responded by sending a final demand for payment on May 11, 2007. A.R. at 181. Plaintiffs questioned whether LINA reviewed the submitted caselaw, but did not submit any additional caselaw or evidence. *Id.* Plaintiffs indicated that if they did not receive an agreement from LINA to pay the claim in full by May 21, 2007, they would pursue their claim in court. *Id.* Accident Claims Manager Brian Billeter responded to Plaintiffs' letter on May 18, 2007, and indicated that the claim had been forwarded to the Home Office for review. On May 24, 2007, Mr. Billeter sent a follow-up letter acknowledging that LINA had reviewed all aspects of the appeal, including the submitted caselaw, and again advised Plaintiffs that their administrative remedies had been exhausted. A.R. at 177-78. Plaintiffs attempted to submit additional evidence in May of 2009, but because this evidence was not presented until two years after the final denial of benefits, LINA would not consider it.[1] Plaintiffs filed suit in this Court on June 3, 2009, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

---

[1]Plaintiffs' additional evidence consisted of expert medical opinions from Henry A. Spiller, MS, and George R. Nichols, M.D., an investigator affidavit from James Malone, and research articles on the origins of blood alcohol in decomposing bodies. A.R. at 22.

## STANDARD

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). This administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal." *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).[2]

Generally, courts "review a plan administrator's denial of ERISA benefits *de novo*." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Still, while the arbitrary and capricious standard is deferential, it is not "'without some

---

[2]Because Plaintiffs' evidence regarding the origins of blood alcohol in decomposing bodies was not timely submitted to the Plan Administrator and was not considered in evaluating the merits of Plaintiffs' claim or appeal, the Court will not consider this evidence.

teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* As the Sixth Circuit has noted, without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence– no matter how obscure or untrustworthy– to support a denial of a claim for ERISA benefits." *Id.*

Although Plaintiff argues that the Court should adopt a *de novo* standard of review, the Policy in this case provides as follows:

> The Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has selected the Insurance Company as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. **In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.** All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

A.R. at 340 (emphasis added). Because Defendant is granted complete discretion in regard to eligibility determinations, the arbitrary and capricious standard applies to this Court's review.

## DISCUSSION

Plaintiffs' Complaint raises two claims for relief. Count I alleges that Defendant wrongfully denied benefits under ERISA. Count II alleges that Defendant breached its fiduciary duty under ERISA. The Court considers these claims separately.

## I.    Denial of Benefits

In support of their position that Defendant wrongfully denied accidental death benefits,

Plaintiffs rely heavily on *Kovach v. Zurich American Insurance Co.*, 587 F.3d 323 (6th Cir. 2009). In *Kovach*, the plaintiff drove his motorcycle while intoxicated and, after running a stop sign, collided with another vehicle resulting in the amputation of his left leg below the knee. *Id.* at 326. The plaintiff filed a claim for accidental dismemberment benefits under his policy with Zurich American Insurance Company. *Id.* Zurich denied the plaintiff's claim, reasoning that his injury was not due to an "accident" under the terms of the policy since he had been driving while intoxicated. *Id.* at 327. "Zurich thus reasoned that the injury was a reasonably foreseeable consequence of driving while under the influence of alcohol and possibly drugs." *Id.* Zurich also concluded that the policy's self-inflicted injury exclusion would apply. *Id.*

Although the district court upheld Zurich's denial of benefits, the Sixth Circuit Court of Appeals reversed and remanded the case for judgment in favor of the plaintiff. *Id.* at 326. The court first noted that "drunk driving is ill-advised, dangerous, and easily avoidable. But . . . so are many other activities that contribute to wrecks that a typical policyholder would consider 'accidental.'" *Id.* at 330. "We must thus refrain from allowing our moral judgments about drunk driving to influence our review of Zurich's interpretation of the relevant Plan provisions." *Id.*

The court then determined that it was arbitrary and capricious for the insurer to deny benefits by finding that Kovach's injury did not meet the definition of "accidental." *Id.* at 338. The court examined whether the insurer's interpretation of the term "accidental" was reasonable. *Id.* at 332 (citing *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006)). Relying on the Webster's dictionary definition of "accidental," the court noted that Kovach clearly did not intend or expect to hit another vehicle. *Id.* at 333. Moreover, the insurer had referred to the wreck as an accident several times in its own documentation. *Id.*

Next, the *Kovach* court examined the insurer's reliance on caselaw in making its decision. The court noted that the cases relied upon were district court cases which "do not uniformly support Zurich's position." *Id.* at 334. The *Kovach* court also noted that the statistics regarding the deaths of impaired drivers does not support a conclusion that Kovach's injury was "reasonably foreseeable." *Id.* at 335. The court found that the insurer's "definition of 'accidental,' which excludes activities that render the risk of serious injury 'reasonably foreseeable,'" might also serve to deny benefits to policyholders who were texting or sleep-deprived while driving. *Id.* at 335-36.

Finally, the court reasoned that the insurer could have easily added an exclusion for driving while intoxicated to the policy. *Id.* at 336. Noting that the policy already had exclusions for sky-diving, parasailing, hang gliding, bungee-jumping, and other similar activities, the court argued that if the insurer truly applied a "reasonably foreseeable injury" definition of accident, these exclusions "would be unnecessary and redundant because all of the listed activities involve a reasonably foreseeable risk of injury." *Id.*

The *Kovach* court adopted "a uniform standard for determining whether an injury is 'accidental' in ERISA cases where the word is not otherwise defined in the applicable policy." *Id.* at 336-37. This standard asks "'whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.'" *Id.* at 337 (quoting *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir. 1990)).

Defendant asserts that the present case is more closely analogous to *Lennon v. Metropolitan Life Insurance Co.*, 504 F.3d 617 (6th Cir. 2007). In *Lennon*, a divided Sixth

Circuit panel held that an insurer's decision to deny personal accident insurance benefits to a drunk driver with a BAC of .321 driving the wrong way down a one way street at a high rate of speed was not arbitrary and capricious. *Id.* at 618-19. The insurer had concluded that the insured's decision to drive impaired rendered his injury reasonably foreseeable and therefore not accidental. *Id.* at 620. The lead opinion noted that the insured's behavior amounted to gross negligence and cited the various factors involved in the insured's death as crucial to its determination:

> This case involved facts – Lennon's extremely high-blood alcohol content, the manner in which Lennon's car flew off the road, the lack of an alternative explanation for the death, and Lennon's driving the wrong way down the street – that rendered at least reasonable MetLife's conclusions that Lennon did not die as a result of an 'accident' under the Plan.

*Id.* at 622. The court declined to "reach the question of whether a fiduciary can reasonably deny 'accidental' benefits for injury that results from any negligent or any illegal behavior, or from driving while only somewhat impaired." *Id.* at 624.

*Kovach* distinguished *Lennon* and held that it was not controlling. 587 F.3d at 331. The *Kovach* court first remarked on the difference between a BAC of .148 versus .321, arguing that at a BAC of .321 someone is "drunk to the point of semi-consciousness," while at .148 someone may be considered only somewhat impaired. *Id.* Additionally, Lennon engaged in other risky behaviors, including driving down a one-way street in the wrong direction and driving at excessive speeds to the point that "the vehicle is on the verge of becoming airborne." *Id.* In contrast, "the only other out-of-the-ordinary thing that Mr. Kovach did was run a stop sign, something done with unfortunate frequency by sober drivers." *Id.* Although the dissent in *Kovach* also recognized driving a motorcycle and testing positive for opiates as two factors

establishing Kovach's behavior was as risky as Lennon's, the lead opinion noted that these

factors were not considered in the administrator's decision, and were therefore irrelevant. *Id.* at

331-32 ("[I]n making its coverage decision, Zurich did not rely on the fact that Mr. Kovach was

on a motorcycle when the accident occurred, so whether a motorcycle is a particularly dangerous

form of transportation is irrelevant to our analysis.").

Although the parties rely on these two cases, the present case differs in that the Court

does not need to determine the definition of "accidental" in this case. In *Kovach*, the policy

included the following definition of an "injury": "Injury means a bodily injury directly caused by

*accidental* means which is independent of all other causes, results from a Hazard, and occurs

while the Covered Person is insured under this Policy." *Id.* at 326 (emphasis added); *accord*

*Lennon*, 504 F.3d at 619 ("*accidental* bodily injuries"). The term "accidental" was not defined

in the *Kovach* policy. *Id.* Thus, the *Kovach* court had to determine whether the insurer's

interpretation of the term "accidental" was reasonable. If it was not reasonable, the insurer's

decision was arbitrary and capricious.

In contrast, the Policy in this case defines a "Covered Injury" as "[a]ny bodily harm that

results directly and independently of all other causes from a Covered Accident." A.R. at 333. A

"Covered Accident" is defined as

> A sudden, unforeseeable, external event that results, directly or independently of
> all other causes, in a Covered Injury or Covered Loss and meets all of the
> following conditions:
>
> 1.   occurs while the Covered Person is insured under this
>      Policy;
>
> 2.   is not contributed to by disease, Sickness, mental or bodily
>      infirmity;

3.	is not otherwise excluded under the terms of this Policy.

A.R. at 333.  Accordingly, the present case specifically defines what is considered an "accident."

It must be a "sudden, unforeseeable, external event."  A.R. at 333.  Thus, this case differs from

*Kovach* and *Lennon*, which both seek to interpret the term "accidental."

Defendant asserts that Mr. Thies's wreck was not "unforeseeable," a term which is not

defined by the Policy.  "In interpreting a plan, the administrator must adhere to the plain

meaning of its language as it would be construed by an ordinary person."  *Morgan v. SKF USA,*

*Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (citation omitted).  The Court "must accept a plan

administrator's rational interpretation of a plan even in the face of an equally rational

interpretation offered by the participants."  *Id.* (citation omitted).  "'[A]n insured should not have

to consult a long line of case law or law review articles and treatises to determine the coverage

he or she is purchasing under an insurance policy.'"  *Kovach*, 587 F.3d at 332-33 (quoting *Walker*

*v. Metro. Life Ins. Co.*, 24 F. Supp. 2d 775, 780 (E.D. Mich. 1997)).

Defendant references the "unforeseeable" nature of Mr. Thies's injury in its internal

memos and denial letters.  For instance, Michael Grimes of the Member Claim Litigation Unit

notes:

> Although the Sixth Circuit Court of Appeals, whose precedent governs here, has
> not itself directly ruled on whether an alcohol-induced boating accident
> constitutes a "Covered Accident," there is sufficient precedent from the district
> courts within the Sixth Circuit examining a like provision under an ERISA-
> governed policy.  Specifically, in *Cates v. Metropolitan Lief Ins. Co., Inc.*, 14 F.
> Supp. 2d 1024 (E.D. Tenn. 1996), affirmed 149 F.3d 1182 (6th Cir. 1998), it was
> held that an insured's death in an automobile accident while intoxicated did not
> constitute an "accidental death" under the ERISA Plan.  Significantly, the *Cates*
> court even noted that "several federal courts reviewing ERISA cases have
> recognized that foreseeable harm resulting from an insured's intentional actions is
> not accidental."  *Id.* at 1027.  The *Cates* court thus stated that "it is neither
> unreasonable nor irrational in light of the plan's provisions for Metropolitan to

conclude the act of driving while [intoxicated at BAC 00.18] rendered the infliction of serious injury or death reasonably foreseeable and, hence, not accidental as contemplated by the plan." *Id.* **Since a "Covered Accident" under the LINA plan must also be "unforeseeable," we believe that coverage has been properly denied.** *See also Eckelberry v. Reliastar Life Insurance Company*, 469 F.3d 340, 344 (4th Cir. 2006) (noting "federal courts have found with near universal accord that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA").

A.R. at 10 (emphasis added). The first denial letter sent to Plaintiffs also discusses the foreseeability of Mr. Thies's injury:

> As stated above, a Covered Accident must be an unforeseen event. The hazards of boating or operating a motorized vehicle while intoxicated are widely known and publicized. Because of this, the jet ski crash that led to Mr. Thies' death was not unforeseeable, and therefore does not qualify as a Covered Accident as defined by the policy.

A.R. at 274. Plaintiffs appealed this decision, and Defendant's denial of this appeal offered additional discussion of the foreseeable nature of Mr. Thies's injury:

> Any reasonable person could have foreseen that Mr. Thies' drinking and operating a jet ski might cause injury or death. Mr. Thies' voluntary actions placed him in a position where he would be at risk to personal injury or death. Since Mr. Thies' death was the foreseeable result of his own voluntary actions, we have concluded that his death was not accidental.

A.R. at 184-85. Defendant's first denial letter thus indicates that something is foreseeable if the hazards of such an action are "widely known and publicized." A.R. at 274. In the denial of Plaintiffs' appeal, Defendant states that something is foreseeable if a reasonable person could have foreseen that such action *might* cause injury or death. *See* A.R. at 184.

A.    *Categorical Per Se Rule*

The Court finds that Defendant applied a categorical *per se* rule that any injury or death resulting from the operation of a motor vehicle and intoxication above the legal limit is foreseeable. "Courts have consistently rejected such as per se rule . . . ." *LaAsmar v. Phelps*

*Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d

789, 802 (10th Cir. 2010) (citing *Stamp v. Metro. Life Ins. Co.*, 531 F.3d 84, 91 & n. 9 (1st Cir.),

*cert. denied*, 129 S. Ct. 636 (2008); *Lennon*, 504 F.3d at 621; *Eckelberry v. Reliastar Life Ins.*

*Co.*, 469 F.3d 340, 345, 347 (4th Cir. 2006); *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1106,

1110 (7th Cir. 1998); *Danouvong ex rel. Estate of Danouvong v. Life Ins. Co. of N. Am.*, 659 F.

Supp. 2d 318, 326-27 (D. Conn. 2009)).  In *Danouvong*, for instance, the District of Connecticut,

analyzing the same policy provision applicable here, rejected as arbitrary and capricious

"LINA's application of a categorical *per se* rule that could, on its terms, easily be used as a *de*

*facto* exclusion in the guise of an inclusion – and thereby impose on a claimant a burden that is

rightfully the insurer's . . . ."  659 F. Supp. 2d at 329.

      While the denial letters in this case contain a summary of the facts, the substance of

Defendant's determination does not rely upon any facts other than that Mr. Thies was intoxicated

and operating a jet ski.  Defendant's statements that "[t]he hazards of boating or operating a

motorized vehicle while intoxicated are widely known and publicized" is presented without

authority or citation to the administrative record.  *See Loberg v. Cigna Group Ins.*, No.

8:09CV280, 2011 WL 612059, at *7 (D. Neb. Feb. 10, 2011) ("When the plan administrator

merely notes the decedent's elevated BAC and makes an '*ipse dixit* pronouncement[ ], without

citation to either the record or to authority, that the hazards of driving while intoxicated are

widely known and publicized,' the administrator has improperly used a *per se* rule to deny the

benefits claim." (quoting *Danouvong*, 659 F. Supp. 2d at 326)).  Defendant's interpretation, as

written in the denial letters, would require the Court to conclude that in every instance where

someone is legally intoxicated and operates a jet ski, without regard to the individual facts of

each case, any policyholder injured or killed as a result of these activities would be denied benefits because injury or death was foreseeable. This is essentially inserting an unwritten exclusion into the Policy. *See Kovach*, 587 F.3d at 336.

B.     *Failure to Consider the Relevant Facts*

Defendant's analysis in general fails to address the specific facts of this case. For instance, Defendant fails to explain how it was foreseeable that, because of Mr. Thies's intoxication, he would hit an underwater rock. The denial letters both acknowledge that Mr. Thies hit an underwater rock but fail to explain how an intoxicated jet ski operator was more likely to hit this rock than any other jet ski operator.[3] This is perhaps the most troubling part of Defendant's determination. In this instance, an underwater rock is equally hidden from impaired and sober drivers. Moreover, even if Mr. Thies was driving at an excessive rate of speed, the likelihood of hitting an underwater rock would have been the same if he had been speeding while sober. The Court would be somewhat astonished if Defendant were to conclude that a sober jet ski operator who was negligently operating a jet ski (by speeding, for instance) was not covered under the policy, as a typical policyholder would expect coverage under such circumstances. *See Kovach*, 587 F.3d at 335; *Wickman*, 908 F.2d 1077, 1088 ("Generally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations and misjudgments.").

In addition to Defendant's failure to consider the foreseeability of an underwater rock, Defendant's denial letters neglect to discuss how operator inattention or excessive speed, two

---

[3]As the Sixth Circuit noted in *Kovach*, the insured in that case ran a stop sign, which is something also done frequently by sober drivers. 587 F.3d at 331.

other issues cited as contributing factors along with intoxication, may have played a role in the accident.  Defendant also fails to discuss Mr. Thies's failure to wear a personal flotation device and his location in a rocky area, although defense counsel relies heavily on these facts in arguing that the decision was not arbitrary and capricious.  Finally, Defendant does not refute the classification of the incident as an "accident" in various reports.  Instead, Defendant simply states that Mr. Thies placed himself in a position where there was a potential for personal injury or death as a result of his drinking and operating a jet ski, which satisfied the foreseeability standard.  Because the denial letters show a complete absence of consideration of the relevant circumstances, the Court believes Defendant's determination was arbitrary and capricious.

C.      Interpretation of "Unforeseeable"

Defendant's denial letters are unclear in defining the term "unforeseeable."[4]  But the application of a *per se* categorical approach to alcohol-related deaths is inconsistent with the plain meaning of the term and how it would be construed by an ordinary person.  *See Kovach*, 587 F.3d at 332 (citing 29 U.S.C. § 1022(a); *Morgan*, 385 F.3d at 992).  As noted in *Kovach*, the statistics do not support Defendant's notion that death is a foreseeable result of drinking and driving.  *See Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 629 (6th Cir. 2007) (Clay, J.,

---

[4]The first denial letter concludes that Mr. Thies's accident was not unforeseeable because the hazards of operating a boat while intoxicated are "widely known and publicized."  A.R. at 274.  The second denial letter notes that "[a]ny reasonable person could have foreseen that Mr. Thies' drinking and operating a jet ski might cause injury or death."  A.R. 184.  As noted by Plaintiff, this last standard is similar to the *Wickman* standard adopted by the Sixth Circuit in *Kovach*, in which "one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."  *Wickman*, 908 F.2d at 1088.  Defendant's stated standard is less stringent, as it merely requires a reasonable person to foresee that an injury *might* occur, not that it is *highly likely* to occur.

dissenting) ("Statistically speaking, legally intoxicated motorists arrive safely at their destination without incident more often than not. Of those that do not, police apprehend and arrest a great many legally intoxicated motorists. Comparatively, the number of legally intoxicated motorists either injured or killed in crashes linked to alcohol is rather small."); *accord Danouvong*, 659 F. Supp. 2d at 327.

Applying Defendant's relaxed "might cause injury or death" standard is certainly a broad interpretation of the term that appears inconsistent with the remainder of the Policy. Any reasonable person might conclude that death could occur in a number of situations in which an insured would ordinarily expect coverage, such as texting while driving or driving while sleep-deprived. *See Kovach*, 587 F.3d at 335-36. Yet incidents occurring as a result of these voluntary actions would be classified as "accidents." *See id.* Moreover, Defendant's standard would render some exclusions superfluous or redundant. For example, it is certainly foreseeable that one *might* suffer injury or death if they board an aircraft above the Earth's surface, attempt to commit a felony, or actively participate in a riot. A.R. at 338; *accord Kovach*, 587 F.3d at 336.

### D. Lack of a Specific Exclusion

The Sixth Circuit in *Kovach* noted the ease with which an insurance company could add a driving while intoxicated exclusion to a policy. *See* 587 F.3d at 336. "The sheer number of court cases nationwide involving disputes over claims by drunk drivers certainly would have put [the insurance company] on notice that it would likely face claims under its AD & D policies based on injuries sustained in alcohol-related collisions." *Id.* Similarly, in this case, Defendant could have added such an exclusion, and Plaintiffs have demonstrated that Defendant includes alcohol-related exclusions in many of its other policies. *See* Pl. Mot. for Judg., DN 67, p. 13-15.

Instead, Defendant's interpretation of the Policy adds an additional eligibility requirement which is not contained in the Policy. This case is not an approval of drinking and driving, but an evaluation of coverage on the terms of the existing Policy.

        E.      *Intentionally Self-Inflicted Injury Exclusion*

In addition to determining that Mr. Thies's crash was not a "Covered Accident," Defendant also stated that the incident was subject to the "intentionally self-inflicted injury" exclusion. Plaintiffs assert that the "intentionally self-inflicted injury" exclusion was improperly applied to Mr. Thies's death. The Policy states:

> [B]enefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the *Description of Benefits* Section:
>
> 1.      intentionally self-inflicted injury, suicide or any attempt thereat while sane or insane . . . .

A.R. at 338 (emphasis in original). Plaintiffs assert that because there was no alcohol exclusion in the Policy and Mr. Thies's injury was not intentional, benefits were wrongfully denied.

Defendant's first denial letter notes that the intentionally self-inflicted injury exclusion applies to Mr. Thies's crash because he voluntarily ingested alcohol and alcohol contributed to his jet ski crash which then resulted in his death. The Sixth Circuit addressed this argument in *Kovach*, noting:

> The Eighth Circuit, sitting en banc, rejected an identical argument in *King v. Hartford Life & Accident Insurance Co.*, 414 F. 3d 994 (8th Cir. 2004) (en banc). There, the insured had died in a motorcycle accident with a BAC of .19. *Id.* at 997. That court held, and we agree, that "[t]he most natural reading of the exclusion for injuries contributed to by 'intentionally self-inflicted injury . . .' does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication." *Id.* at 1004. Although Mr. Kovach acted intentionally in drinking to excess and then riding his motorcycle, nothing in the

record indicates that he did so with a mind towards harming himself. Zurich's interpretation of the exclusion in question conflates intentional actions with intentional *results*. Mr. Kovach's injuries, in other words, were the result of the collision, not simply a consequence of his acts of drinking and driving. After all, "[o]ne rarely thinks of a drunk driver who arrives home safely as an 'injured' party." *Id.* Mr. Kovach's intoxication likely contributed to the collision, but to define his excessive drinking as a "purposely self-inflicted wound" would be an illogical and "startling construction." *Id.* Zurich's denial of the Kovaches' claim on this basis was therefore arbitrary and capricious.

587 F.3d at 338-39; *accord Jessen v. Cigna Group Ins.*, No. 09-12280, 2011 WL 2516157, at

*14 (E.D. Mich. June 21, 2011). In this case, Mr. Thies's injuries were a result of his jet ski

collision. Nothing in the record indicates that he became intoxicated with the intent to do harm

to himself. Thus, the Court finds that *Kovach* is controlling on this issue and holds that

Defendant's application of the "intentionally self-inflicted injury" exclusion was arbitrary and

capricious.

F. *Conflict of Interest*

Finally, the Court must consider potential conflicts of interest, including situations where

the plan administrator is also the payer of plan benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S.

105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). A conflict

of interest is just one factor considered in the Court's determination; it does not change the

standard of review. *Glenn,* 554 U.S. at 116-17. The Supreme Court ruled in *Glenn* that a

conflict of interest is of greater importance where there is "a history of biased claims

administration . . . ." *Id.* A conflict should not be a substantial factor, however, if the insurer has

taken steps to reduce bias, such as "walling off claims administrators from those interested in

firm finances, or by imposing management checks that penalize inaccurate decisionmaking . . . ."

*Id.* The First Circuit has interpreted these statements to mean that "courts are duty-bound to

inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 9 (1st Cir. 2009).

Because Defendant decides which claims to pay and is also responsible for paying those benefits, a conflict of interest exists. Defendant has not provided the Court with details regarding its claims administration process or steps taken to reduce bias. Instead, Defendant merely notes in a footnote in its brief that the conflict of interest is one factor to be weighed in the Court's decision. Thus, the Court considers this conflict of interest as another factor weighing slightly in favor of finding that Defendant's determination was arbitrary and capricious.

G.     *Remand and Instructions*

Based on the foregoing, the Court finds that Defendant's benefits determination was arbitrary and capricious because of (1) the application of a categorical *per se* rule, (2) the overly broad interpretation of the term "unforeseeable," (3) failure to consider the facts and circumstances of this case, (4) unreasonable application of the self-inflicted injury exclusion and (5) an inherent conflict of interest. The Court believes that these factors support a finding that Defendant failed to engage in a "deliberate principled reasoning process . . . supported by substantial evidence." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted). However, the Court does not believe the record clearly establishes that Plaintiffs are entitled to benefits. Therefore, this case is remanded to Defendant to conduct a full and fair review. *See, e.g.*, *Elliott v. Metro. Life Ins. Co. of N. Am.*, 473 F.3d 613, 622 (6th Cir. 2006) (remand to MetLife appropriate where the Court did not find that the plaintiff was "clearly

entitled to benefits")).

The Court directs Defendant to apply the *Wickman* standard, as adopted in *Kovach*, on remand in order to determine whether Mr. Thies's injury was unforeseeable. *See Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088-89 (1st Cir. 1990). Furthermore, the Court's ruling prevents Defendant from applying the intentionally self-inflicted injury exclusion to this matter. Defendant should consider all facts and circumstances of the case. In the interests of justice, and in order to facilitate a full and fair review, both parties may submit any additional relevant evidence on remand.

## II.     Breach of Fiduciary Duty

ERISA allows a participant in a covered plan to bring a private right of action "against a person that qualifies as a fiduciary" and breaches that duty under the plan's terms. 29 U.S.C. § 1132(a)(3); *see Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 551 (6th Cir. 1998), *cert. denied* 525 U.S. 1178 (1999). Who qualifies as an ERISA fiduciary can be determined in one of two ways: the plan can designate an individual/entity as a fiduciary, or the individual/entity can "'exercise[ ] discretionary control or authority over the plan's management, administration or assets.'" *Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 549 (6th Cir. 1998) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)). Neither party disputes that Defendant is a fiduciary.

Plaintiffs allege that Defendant breached its fiduciary duty by failing to establish reasonable claims procedures and refusing to provide relevant claims guidelines to participants and beneficiaries. But Plaintiffs' claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is barred. "[A] participant cannot seek equitable relief for a breach of fiduciary duty

under the catchall provision of [§ 1132(a)(3)] if the alleged violations are adequately remedied under other provisions of [§ 1132]." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 454 (6th Cir. 2003). Because § 1132(a)(1)(B) provides a remedy for Plaintiffs to recover benefits, there is no cause of action permitted for breach of fiduciary duty pursuant to § 1132(a)(3). *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996)). Accordingly, this claim is dismissed.

### III.     Attorney's Fees and Costs

Plaintiffs seek an award of attorney's fees and costs incurred in this litigation. The Court, in its discretion, may award attorney's fees and costs to a beneficiary under 29 U.S.C. § 1132(g)(1). The Sixth Circuit requires consideration of five factors in determining whether to award attorney's fees in an ERISA case:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting the fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008) (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006)). No single factor is determinative. *Moon*, 461 F.3d at 642-43.

Neither party fully addressed the issue of attorney's fees and costs in their briefs. Accordingly, the Court will allow Plaintiffs to file a separate motion for attorney's fees and costs within thirty (30) days of the filing of this Memorandum Opinion and the accompanying Order.

Plaintiffs also seek prejudgment interest. "Awards of prejudgment interest 'are not punitive, but simply compensate a beneficiary for the lost interest value of money wrongly

withheld from him or her.'" *Perrin v. Hartford Life Ins. Co.*, No. 06-182-JBC, 2008 WL 2705451, at *2 (E.D. Ky. July 7, 2008) (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998)). Because the Court is remanding this matter instead of entering judgment in Plaintiffs' favor, an award of prejudgment interest on past due accident benefits would be inappropriate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Judgment on Count I. Count II of the Complaint is DISMISSED. This matter is REMANDED to Defendant for a full and fair review in light of the Court's discussion and instructions.

An appropriate order shall issue.