UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-00098-TBR

ELIZABETH THIES and MATTHEW THIES                              PLAINTIFFS

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the Plaintiffs' Motion for Attorneys' Fees and Costs. DN 83. The Defendant has responded. DN 86. The Plaintiffs have replied. DN 87. Fully briefed, this matter is now ripe for adjudication. For the following reasons, Plaintiffs' motion is GRANTED.

## BACKGROUND

On May 28, 2006, Wade Thies was killed while operating a jet ski on Kentucky Lake. At the time of his death, Thies was a riverboat captain employed by Ingram Industries, Inc., a corporation that subscribed to a policy of accidental death and dismemberment insurance offered by Life Insurance Company of North America's ("LINA"). Following Thies's death, the Plaintiffs filed a claim for benefits under the policy on October 5, 2006. On November 10, 2006, a claims examiner for LINA denied the claim. After a series of appeals to the company and the submissions of additional evidence, LINA advised the Plaintiffs in a May 24, 2007 letter that their administrative remedies had been exhausted. The Plaintiffs then filed suit in this Court on June 3, 2009, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). In an opinion of August 16, 2011, the Court found that the Defendant's benefits determination was arbitrary and capricious and remanded to the Defendant for a full and fair review in light of the Court's opinion and instructions.

In light of the Court's remand, the Plaintiffs filed the present motion for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).  Plaintiff's claim they are entitled to fees and costs because the Court's remand indicated that they had achieved "some degree of success on the merits" as contemplated by *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149 (2010), and *McKay v. Reliance Standard Life Ins. Co.*, 428 Fed. Appx. 537 (6th Cir. 2011).

## DISCUSSION

### I.      Remand Constitutes "Some Degree of Success on the Merits."

Under 29 U.S.C. § 1132(g)(1), a court may, in its discretion, allow reasonable attorney's fees and costs in an ERISA action.[1]  In *Hardt v. Reliance Standard*, the U.S. Supreme Court "consider[ed] the circumstances under which a court may award attorney's fees pursuant to § 1132(g)(1)."  *Hardt*, 130 S. Ct. at 2156.  The Court held that "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)."  *Id.*  Instead, fees and costs may be awarded "as long as the fee claimant has achieved 'some degree of success on the merits.'"  *Id.* at 2152 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

In *Hardt*, Reliance Standard Life Insurance Company denied the plaintiff full benefits under her employer's disability insurance plan.  *Id.* at 2152-53.  After exhausting her administrative remedies, the plaintiff sued Reliance for violating ERISA.  *Id.* at 2153-54.  The district court eventually remanded the case to Reliance because the plaintiff "did not get the kind of review to which she was entitled under applicable law."  *Id.* at 2154.  Upon further review, Reliance found that the plaintiff was disabled within the terms of the policy and awarded her full benefits.  *Id.*  The plaintiff then moved for and the district court awarded attorney's fees and costs under § 1132(g)(1).  *Id.* at 2154-55.  Reliance appealed the award.  *Id.* at 2155.  Based on

---

[1] "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).

the fact that the plaintiff received a remand in the lower court and was eventually awarded benefits under the plan, the Supreme Court found "that [the plaintiff] has achieved far more than 'trivial success on the merits' or a 'purely procedural victory. . . . [S]he has achieved 'some success on the merits,' and the District Court properly exercised its discretion to award [the plaintiff] attorney's fees in this case." *Id.* at 2159. Although finding for the plaintiff, the Court did "not decide . . . whether a remand order, *without more*, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." *Id.* (emphasis added).

Although the Supreme Court did not decide if a remand order, without more, was sufficient to achieve 'some degree of success on the merits,' the Sixth Circuit recently took up the issue in *McKay v. Reliance Standard Life Ins. Co.*, 428 Fed. Appx. 537 (6th Cir. 2011). In *McKay*, the plaintiff sought payment of long term disability benefits offered through his employer. *Id.* at 538-40. One of the plan's benefit providers, Reliance, denied benefits, and, after exhausting administrative remedies, the plaintiff sued for violations of ERISA. *Id.* at 539. The district court remanded to the insurer for further determination because its first denial was "unreasonable and arbitrary." *Id.* at 540. After the remand order was entered, the plaintiff moved for and the district court awarded attorney's fees under § 1132(g)(1). *Id.* On remand, Reliance again denied the plaintiff benefits under the policy, and the plaintiff once against sued to recover the same. *Id.* In the second suit, the district court upheld the insurance company's denial of benefits because the decision was "rational and supported by the record." *Id.* The plaintiff appealed the denial of benefits decision to the Sixth Circuit, and Reliance cross-appealed the award of attorney's fees.

3

On appeal, the Sixth Circuit affirmed Reliance's denial of benefits.  *Id.* at 545.  More importantly for the present motion, the court upheld the plaintiff's award of attorney's fees because the first case was remanded to Reliance.  *Id.*  at 547.  The Sixth Circuit affirmed the district court's findings that attorney's fees were available because "even if [the plaintiff] is ultimately ineligible for benefits, he has still seen some success on the merits because his case was remanded for further consideration."  *Id.* at 546.  The court of appeals found that the plaintiff's position on attorney's fees was supported by the Supreme Court's decision in *Hardt*.  *Id.* at 547.  Thus, although *Hardt* did not decide whether remand, alone, was sufficient to make an award of attorney's fees available under § 1132(g)(1), *McKay* expressly holds that it is.  *Id.* ("[The plaintiff] 'achieved some degree of success' by achieving a remand.").  Even though the plaintiff was ultimately denied benefits under the policy at issue in *McKay*, the court held that attorney's fees and costs may be available under § 1132(g)(1) when a party's case is remanded.  *Id.*  In the Sixth Circuit, a remand, alone, constitutes "some success on the merits" that makes an award of attorney's fees and costs available under § 1132(g)(1).  Other district courts in the circuit considering this question have come to the same conclusion.  *See Potter v. SABIC Innovative Plastics US, LLC*, 2011 U.S. Dist. LEXIS 118604, *7 (S.D. Ohio 2011) ("[T]he Sixth Circuit . . . held that a plaintiff achieves some degree of success on the merits by achieving a remand based on failure to comply with ERISA guidelines."); *Bio-Medical Applications of Ky., Inc. v. Coal Exclusive Co., LLC*, 2011 U.S. Dist. LEXIS 91187, *7 (E.D. Ky. 2011) ("The [*McKay*] [C]ourt determined that the remand satisfied *Hardt*'s standard for 'success.'"); *Bowers v. Hartford Life & Accident Ins. Co.*, 2010 U.S. Dist. LEXIS 114663, *6 (S.D. Ohio) ("[R]emand does not preclude a finding of 'some success on the merits.'").

4

In the present case, the Court remanded to LINA because it found that LINA's benefits determination was arbitrary and capricious.  Following *Hardt* and *McKay*, a remand to LINA represents "some degree of success on the merits" for the plaintiffs and makes an award of attorney's fees and costs available under § 1132(g)(1).  Because an award of attorney's fees and costs is available, the Court must now determine whether it should be given.

## II.     The *King* Factors Favor an Award of Attorney's Fees and Costs.

Once a court determines that attorney's fees are available because a party has achieved "some degree of success on the merits," whether those fees should be awarded is governed by the *King* factors. [2]  *See Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).  When applying these factors, "[n]o single factor is determinative, and thus, the district court must consider each factor before exercising its discretion."  *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006) (citation omitted).  Additionally, there is "no presumption as to whether attorney fees will be awarded" in the Sixth Circuit.  *Foltice v. Guardsman Prods. Inc.*, 98 F.3d 933, 936 (6th Cir. 1996).  In determining whether Thies will be awarded attorney's fees in this case, the Court will consider the following factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*King*, 775 F.2d at 669 (citations omitted).  The Court will address each of these factors in turn.

---

[2] In *Hardt* the Supreme Court did not foreclose the use of a "factor test" to award attorney's fees once a party had achieved "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 n.8 (2010) ("We do not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may considered the five factors adopted by the [Fourth Circuit] Court of Appeals . . . in deciding whether to award attorney's fees.").

1. ***Factor One: Culpability or Bad Faith of the Opposing Party.***

Under the first *King* factor, the Court must determine "the degree of the opposing party's bad faith or culpability." *Id.* In remanding the benefits determination to LINA, this Court determined that LINA's denial of benefits was arbitrary and capricious. The Court notes that "an arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith." *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 Fed. Appx. 99, 109 (6th Cir. 2004). This Court found that LINA's denial of benefits was arbitrary and capricious because: 1) it applied a categorical *per se* rule, 2) it gave an overly broad interpretation to the term "unforeseeable," 3) it failed to considered the specific facts and circumstances of the case, 4) its application of the self-inflicted injury exclusion was unreasonable, and 5) it did not take steps to ameliorate its conflict of interest. In light of these previous findings, the Court now finds LINA acted with culpability in denying benefits to Thies. "Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits, [courts] have found that attorney fees are appropriate." *Shelby Cnty. Health Care Corp v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355, 377 (6th Cir. 2009). The first *King* factor weighs in favor of the Plaintiffs.

2. ***Factor Two: Opposing Party's Ability to Satisfy the Award.***

The second *King* factor examines the opposing party's ability to pay an award of attorney's fees and costs. *King*, 775 F.2d at 669. In its response to plaintiffs' motion for attorney's fees, LINA does not dispute its ability to pay. Instead, it points out that ability to pay "alone is not dispositive" in determining whether to award attorney's fees. *Foltice*, 98 F.3d 937. When an opposing party "clearly possesses the ability to pay, this factor alone should not be

dispositive when examination of all other relevant factors indicates that fees should not be awarded." *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 557 (6th Cir. 1987).

The Court finds that LINA has the ability to pay an award of attorney's fees and costs in this case. In determining whether to actually award fees, however, the Court places little emphasis on this factor. Given that the Court finds fees are warranted under other factors, this Court gives this consideration little weight.

### 3.   *Factor Three: Deterrent Effect of the Award on Person in Similar Circumstances.*

The third *King* factor directs a court to examine the "deterrent effect of an award on other persons under similar circumstances." *King*, 775 F.2d at 669. "The key question in analyzing this third factor is . . . whether the fee award would have a deterrent effect on other plan administrators." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 532 (6th Cir. 2008). In opposing the imposition of attorney's fees and costs, LINA argues that under the first *King* factor it has not acted with any culpability and "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Foltice*, 98 F.3d at 937. Under the first *King* factor, the Court has found that LINA acted with culpability in denying benefits. The Court's decision to remand for further determination was based on, among other things, LINA's categorical imposition of a *per se* rule, the failure to consider the facts and circumstances of the case, the unreasonable application of a self-inflicted injury exclusion, and LINA's failure to ameliorate an inherent conflict of interest.

Under the third *King* factor, the Court finds that an imposition of attorney's fees and costs will serve to deter other plan administrators from participating in and conducting policy reviews based on factors that rendered LINA's determination arbitrary and capricious. The third *King* factor weighs in favor of the Plaintiffs.

### 4.   *Factor Four: Common Benefits or Resolution of Significant ERISA Legal Question*

The fourth *King* factor weighs in favor of the party seeking attorney's fees and costs if the moving party "sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve [a] significant legal question regarding ERISA."  *King*, 775 F.3d 669.  In their motion for fees, the Plaintiffs do not claim to resolve legal questions involving ERISA. Instead, they argue that their case has conferred a common benefit on other participants and beneficiaries by challenging LINA's *per se* rule, by narrowing LINA's definition of "foreseeable," and by showing that LINA unreasonably applied the self-inflicted injury exclusion contained in the plan.  The Court cannot agree with this argument because any benefit conferred on future claimants was merely "incidental" to the Plaintiffs' case.

Having reviewed the complaint and other relevant documents in this case, the Court finds no indication that the Plaintiffs did anything other than seek the plan's "'benefits for [themselves] and did not seek to confer a benefit upon all participants.'"  *Gaeth*, 538 F.3d at 533 (quoting *Moon*, 461 F.3d at 645).  While true that the Court's findings in its decision to remand for further determination might be useful to other plaintiffs in future cases, there is no indication that the Plaintiffs in this case *sought* to bring their case for this purpose.

In *Foltice*, the Sixth Circuit agreed with the district court that the fourth *King* factor weighed against the plaintiff because there was "no evidence that the plaintiff sought, through this action, to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA."  *Foltice*, 98 F.3d 937.  In *Foltice*, there were four other employees in situations similar to the plaintiff's.  *Id.*  Any "benefit realized by these four participants [from the plaintiff's case] was 'incidental.'"  *Id.*  Overall, the *Foltice*

Court found that this factor weighed against the plaintiff even though its outcome might be beneficial to other claimants.

Similarly, in *Gaeth*, the court found, based on the facts before it, that the fourth *King* factor weighed against the plaintiff.  "Gaeth did not seek to obtain a common benefit for all participants in [the employer's] plan.  Furthermore, the record does not establish, and Gaeth does not argue, that any other participant in [the employer's] plan was in the same position as Gaeth." *Gaeth*, 538 F.3d at 533.

In the present case, the Plaintiffs have not identified any individuals or plan beneficiaries that are in similar positions, nor is there any evidence that the Plaintiffs sought to confer a common benefit on others.  Any points of law arising from this case that are beneficial to others are merely incidental to the Plaintiffs' ultimate goal of obtaining the benefits of the policy for themselves.  The fourth *King* factor weighs in favor of the Defendant.

### 5.  *Factor Five: Relative Merits of the Parties' Positions.*

The fifth *King* factor requires the Court to consider the "relative merits of the parties' positions." *King*, 775 F.3d at 669.  When considering this factor, the *Gaeth* Court found that the "record leaves open the possibility that [the insurance company] might ultimately prevail in showing that Gaeth is no longer disabled.  Thus, the merits of Gaeth's position are at best questionable as compared to the merits of the [insurance company's position], causing this factor to weight against an award of attorney fees . . . ." *Gaeth*, 538 F.3d 534.  In *Gaeth*, like the present case, the district court had remanded the benefit determination to the insurance company because the company's prior decision was arbitrary and capricious.  *Id.* at 527.  Because there had been not final determination by the insurance company, *Gaeth* noted "that awarding attorney fees to Gaeth now could result in the incongruous situation of the party that ultimately wins

nevertheless being required to pay attorney fees of the losing party." *Id.* at 534.  *Gaeth* was decided before *McKay*.  In *McKay*, the Sixth Circuit upheld that payment of attorney's fees in the exact "incongruous situation" *Gaeth* envisioned.  *See McKay*, 428 Fed. Appx. at 545-47.

As pointed out in their reply brief, the Plaintiffs have overcome the arbitrary and capricious standard of review, which is highly deferential to the Defendant.  In remanding the benefits determination to LINA, the Court found that the insurance company, among other things, failed to consider the facts and circumstances of the case and relied upon an unreasonable interpretation of the "self-inflicted injury" exclusion.  Based on the decision to remand the case, the Court finds that the Plaintiffs' case is the one having more relative merit.  The fifth *King* factor weighs in favor of the Plaintiffs.

Overall, the Court has found that the first, third, and fifth *King* factors weigh in favor of an award of Plaintiffs' attorney fees.  Only the fourth factor weighs against the award of fees.  Based on the *King* factor analysis conducted above, the Court finds that the Plaintiffs are entitled to an award of attorney's fees and costs under § 1132(g)(1).

### III.    Amount of the Awards of Attorney's Fees and Costs.

In their motion for attorney's fees and costs, the Plaintiffs ask the Court to award $64,481.00 in fees as calculated under the "lodestar method."[3]  In response to this amount, the Defendant objects to the award of fees and contends that the hourly rate charged by Plaintiffs'

---

[3] The "lodestar" method is the "proper method for determining the amount of reasonable attorneys' fees." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citations omitted).  This approach involves two steps.  First, the court calculates the "lodestar" by multiplying "the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, 478 U.S. 546, 563 (1986).  Second, the court can then adjust the lodestar up or down based on a number of different factors. *Id*.  For general information regarding the lodestar method, see *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

counsel, Michael Grabhorn, is excessive.[4]  Additionally, the Defendant claims that it should not be required to pay fees resulting from: 1) discovery motions that ultimately proved unsuccessful, 2) the briefing of scheduling issues, and 3) the briefing of whether the action was governed by ERISA when the Plaintiffs' complaint was filed as an ERISA action.

The Court finds that the Defendant's arguments are unpersuasive.  Ultimately, the Plaintiffs' achieved "some degree of success on the merits" of their case as contemplated by *Hardt* and *McKay*.  Although the Court acknowledges that Plaintiffs' counsel, Michael Grabhorn, was willing to litigate to the boundaries of discovery on certain issues, it does not find any evidence or indication of bad faith regarding the various avenues of litigation pursued in this case.  In fact, the court ultimately had to conduct an *in camera* review of certain documents before granting in part and denying in part the Plaintiffs' motion to compel.  *See* DN 63.

Under *Hardt/McKay* and the *King* factors, the Plaintiffs' are entitled to an award of fees, pursuant to 29 U.S.C. § 1132(g)(1), for the work performed by Plaintiffs' counsel in the affidavit attached to the Plaintiffs' motion for fees.  *See* DN83-2.  Section 1132(g)(1) allows a court, in its discretion, to award reasonable attorney's fees in an ERISA action.  For the purpose of awarding fees, the Court will award the Plaintiffs' counsel fees at a reasonable hourly rate.  "A trial court, in calculating the 'reasonable hourly rate' . . . should initially assess the 'prevailing market rate in the relevant community.'"  *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).  For the purpose of awarding attorney's fees, the "relevant community' is "the legal community within [the] court's territorial jurisdiction; thus the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  *Id.*

---

[4] The Defendant does not object to the hourly rate charged by Plaintiffs' counsel W. Kevin Shannon ($250 per hour) or to the hourly rate for work performed by Plaintiffs' counsel's paralegal ($110 per hour).  As such, the Court will grant fees to the Plaintiffs at the hourly rates submitted for these individuals.

In the present case the Plaintiffs are the only party that has presented evidence regarding the "prevailing market rate" for an ERISA litigator in the "relevant community," which is the Western District of Kentucky. The Plaintiffs, through the attached affidavit of their counsel, present evidence that Michael Grabhorn takes ERISA cases on and is paid an hourly rate of $350. DN 83-1, ¶5. In arguing against this hourly rate, the Defendant cites several cases from across the Sixth Circuit in which district courts have reduced the hourly rates or the total number of hours that the plaintiff's counsel was able to collect in an ERISA litigation. *See Elec. Energy, Inc. v. Lambert*, No. 10-2629-STA, 2011 WL 1883986 (W.D. Tenn. May 17, 2011); *Caudill v. Sears Transaction Payment Plan*, No. 06-12866, 2011 WL 1595044 (E.D. Mich. April 26, 2011) *Helfman v. GE Group of Life Assurance Co.*, No. 06-12528, 2011 WL 1464678 (E.D. Mich. April 18, 2011); *Fleming v. Brotherhood of Maintenance of Way Empoyes Div. of Intern. Broth. of Teamsters*, No. 08-11457, 2011 WL 900036 (E.D. Mich. March 14, 2011); *Moore v. Menasha Corp.*, No. 1:08-CV-1167, 2011 WL 811150 (W.D. Mich. March 1, 2011). None of these cases are from the "relevant community," however.

The only case that the Defendant cites from Kentucky is *Loan v. Prudential Ins. Co. of Am.*, 788 F.Supp.2d 558 (E.D. Ky. 2011). In *Loan*, which is from the Eastern District of Kentucky and not the relevant Western District, the defendant did "not dispute the reasonableness of the hourly rate stated in the Plaintiffs' attorneys' affidavits . . . ." *Id.* at 565. Because the defendant did not dispute plaintiff's counsel's $275 hourly rate, the court did not address whether it was reasonable in the relevant community. Thus, *Loan* is not on point in the present case where the parties are disputing the reasonableness of the hourly rate to be awarded.

Overall, only the Plaintiffs have presented evidence of an hourly rate from an ERISA litigator in the Western District of Kentucky. Because the Defendant has not presented the Court

12

with any evidence to the contrary or pointed to any cases from the Western District of Kentucky that would establish a reasonable amount from fees for this community, the Court will award Plaintiffs' counsel, Michael Grabhorn, an hourly rate of $350, subject to the following adjustment.

In his affidavit attached to the Plaintiffs' motion for fees, Michael Grabhorn asserts that he charges $350 per hour for work on ERISA benefit claims.  DN 83-1, ¶5.  Mr. Grabhorn has charged $350 per hour since January 2010.  *Id.*  The present case began in 2009, prior to the time that Mr. Grabhorn changed his hourly rate to $350.  According to the exhibit for time and costs attached to Plaintiffs' motion, Mr. Grabhorn spent 27.6 hours on this case prior to January 2010.  Mr. Grabhorn has not presented any evidence regarding his hourly rate before January 2010.  Accordingly, the Court finds $275 per hour is a reasonable hourly rate for the time that Mr. Grabhorn spent on this case prior to January 2010.  Attorney's fees will be awarded at a rate of $275 per hour for work done by Mr. Grabhorn prior to January 2010, and will be awarded at a rate of $350 for work done by him after January 2010.

Overall, the Plaintiffs will receive $62,411.00 in attorneys' fees.  The breakdown of this amount is as follows.  For the work of Michael Grabhorn, Plaintiffs will receive $275 per hour for the 27.6 hours of work he performed prior to January 2010, or $7,590.00.  After January 2010, Mr. Grabhorn performed 111.4 hours of work, including 5.4 hours submitting a reply brief in the present motion.  Plaintiffs will receive $350 per hour, or $38,990.00, for Mr. Grabhorn's work after January 2010.  For the work of W. Kevin Shannon, Plaintiffs will receive $250 per hour for the 58.0 hours of work he performed in this case, or $14,500.00.  Finally, Plaintiffs will receive $110 per hour for the 12.1 hours of work performed by Plaintiffs' counsel's paralegal, or $1,331.00.

The Defendant also argues that the Plaintiffs should not be awarded costs for "non-taxable items such as postage" because such costs are not recoverable under 28 U.S.C § 1920. The Defendant's arguments against costs are not persuasive because it has not pointed to any authority that would lead the Court to find that the express language of 29 U.S.C. § 1132(g)(1), which allows the recovery of costs in the Court's discretion, is limited by 28 U.S.C. § 1920. Furthermore, the cases cited by the Defendant, *King v. Gowdy*, 268 Fed. Appx. 389 (6th Cir. 2008), and *Porter v. Caruso*, No. 1:05-CV-562, 2010 WL 434245 (W.D. Mich. Jan. 26, 2010), are cases involving the recovery of fees in § 1983 civil rights actions, not ERISA actions for costs under 29 U.S.C. § 1132(g)(1). The Plaintiffs will be allowed to recover costs of $525.12.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs is GRANTED.

IT IS HEREBY ORDERED than the Defendant will pay the Plaintiffs' attorney's fees in the amount of $62,411.00. IT IS FURTHER ORDERED than the Defendant will pay the Plaintiffs' costs of $525.12.

14